# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

LORIE HARRIS,                          :
                                       :
    Petitioner,              :
                                       :
vs.                                    :    CRIM. NO.08-00332-WS-B
                                       :    CIVIL ACTION NO. 09-00671-WS
UNITED STATES OF AMERICA,              :
                                       :
    Respondent.              :

## REPORT AND RECOMMENDATION

Pending before the Court is Petitioner Lorie Harris's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 30), Respondent's Motion to Dismiss in part and deny in part the motion to vacate (Doc. 35), and Petitioner's reply thereto. (Doc. 36)[1]. This action was referred to the

---

[1] Also pending before the Court is Harris' Motion for Default Judgment (Doc. 34), Motion to Strike Government's Response (Doc. 37) and Motion for Status. (Doc. 38). In her Motion for Default Judgment, and Motion to Strike, Harris argues that a default judgment should be entered against the Government because it failed to file a timely response as directed by the Court, and that its belated response should be stricken. The docket reveals in an Order dated November 25, 2009 (Doc. 31), the Government was directed to file a response by January 25, 2010. When no response was filed, the Court issued a second Order directing the Government to show cause for its failure to file a response, and to file a response by April 16, 2010.(Doc. 32). Harris, on April 2, 2010, filed her Motion for Default, and less than a week later, the Government filed its response. (Docs. 34, 35). The Government's initial failure to respond
(Continued)

undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 8(b) of the Rules Governing Section 2255 Cases and is now ready for consideration.[2]

---

does not entitle Harris to relief. The Eleventh Circuit has held that default judgments are inappropriate in habeas corpus cases. See Aziz v. Leferve, 830 F. 2d 184, 187 (11th Cir. 1987)("[A] default judgment is not contemplated in habeas corpus cases. . . ."). See also, Lemons v. O'Sullivan, 54 F. 3d 357, 364-65 (7th Cir. 1995)("Default judgment is an extreme sanction that is disfavored in habeas corpus cases."); Allen v. Perini, 424 F. 2d 134, 138 (6th Cir. 1970)(concluding that default judgments are not available in habeas corpus proceedings, and that Federal Rule of Civil Procedure 55 pertaining to entry of default judgment is not applicable in habeas corpus cases.) Moreover, the undersigned finds that while there was a brief delay in the filing of the Government's response, the Government moved swiftly in filing a response once the oversight was brought to its attention, and that Harris has failed to demonstrate any prejudice as a result of the brief delay. Accordingly, it is recommended that Harris' Motion for Default Judgment and Motion to Strike be denied. Additionally, in light of the instant report and recommendation, it is recommended that Harris' Motion for Status be denied as moot.


[2] The Honorable Chief United States District Judge William H. Steele presided over the guilty plea proceedings in this action and imposed the challenged sentence. On October 13, 2009, Judge Steele referred the matter to the undersigned Magistrate Judge for entry of a Report and Recommendation. The undersigned has reviewed the Petitioner's motion and related documents, the transcripts, of the guilty plea hearing and sentencing hearing, and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Judge Steele. Based upon that review, the undersigned makes the following report and recommendation.

Because the record is adequate to dispose of this matter, no evidentiary hearing is required. Having carefully reviewed the record, it is recommended that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 30) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Lorie Harris.

## I. BACKGROUND

On October 30, 2008, Harris was charged by indictment with one count of conspiracy to possess with intent to distribute more than 100 kilograms of cocaine in violation of 21 U.S.C. § 846(a)(1), subject to penalty provisions under 21 U.S.C. § 841(b)(1)(A). (Doc. 1). On January 12, 2009, the Court appointed attorney Richard Yelverton to represent Harris. (Doc. 13).

Pursuant to a plea agreement with the Government, Harris pled guilty on February 25, 2009 to the indictment. (Doc. 33). She specifically admitted in the factual resume, filed with the plea agreement, to "involvement beyond a reasonable doubt with 140 kilograms of cocaine." (Doc. 20 at 13). The plea agreement and factual resume were signed by Harris and her attorney, as well as the Assistant United States Attorney. (Doc. 20).

At sentencing, the Court adopted the Presentence Report's determination of a base offense level of 33, subject to a two

level reduction due to application of the safety-valve, a four level reduction for playing a minimal role in the offense, and a three level reduction for acceptance of responsibility. This resulted in a total offense level of 24 and a criminal history Category of I. (Doc. 33 at 4). The applicable advisory sentencing guideline range was 51-63 months in prison. (Id. at 9). Harris was sentenced to the Bureau of Prisons for a term of 51 months with a recommendation that defendant be allowed to participate in residential, comprehensive substance abuse treatment while incarcerated. The order was entered on June 3, 2009. (Doc. 26).

On June 19, 2009, Harris filed a notice of Non-appeal, waiving her right to appeal the judgment. (Doc. 25). On October 13, 2009, Harris filed the present collateral attack on her conviction and sentence pursuant to 28 U.S.C. § 2255 (Doc. 28). Harris raised the following three claims: (1)Petitioner's counsel was ineffective by inducing her to sign the plea agreement and thus admitting to the total amount of cocaine when she did not understand the elements charged, (2) Petitioner's Presentence Report ("PSR"), adopted at the sentencing hearing, "does not support a factual interpretation of sentencing

guidelines",[3] and (3) Petitioner's counsel was ineffective for failing to explain the elements of the offense at the sentencing stage and failing to refute the sentence determination. (Id.)

The United States filed a Response to Motion to Vacate on April 8, 2010. (Doc. 35). Therein, the government argues that the first ground asserted by Harris, ineffective assistance of counsel during the plea colloquy, is due to be dismissed as a matter of law, because Harris cannot prove that her attorney's conduct prejudiced the outcome of the case. The government also argues that the second ground asserted by Harris regarding sentencing is foreclosed by her knowing and voluntary sentence appeal waiver. (Id. at 5-9), and that any claim for ineffective assistance of counsel at sentencing is meritless.

On May 4, 2010, Harris filed a Reply to the Response. (Doc. 36). Therein, Harris further expounds upon her claims. Specifically, she argues that Mr. Yelverton failed to explain

_____

[3] Though pled as a single ground for relief, the Court construes Grounds Two, as two separate claims: 1) a substantive claim attacking the court's sentencing determination ("[c]onflicted amount of conspiracy has to be accounted among co-defendants individually," and 2) a claim for ineffective assistance of counsel at the sentencing stage ("Petitioner never understood actual elemental charged amount; [and] therefore was unable to refute alleged error at sentencing or prior to sentencing.")(Doc. 30 at 4, 6).

her sentencing rights to her at the plea colloquy because of his prejudice towards her,[4] and as support, she points to sentencing disparities between herself and other co-conspirators. (Doc. 36 at 2-5).

## II. HABEAS STANDARD

Habeas relief is an extraordinary remedy which "may not do service for a[ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165 (1982). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185 (1979).

"A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction." Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) (citation omitted). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the

_____

[4] Harris claims that at the conclusion of the plea colloquy, Yelverton told Judge Steele, "Your Honor, while I don't believe her to be a flight risk, frankly your honor, I don't believe a word she says." (Doc. 36 at 2). The record does not reflect this statement. (See Doc. 33, Guilty Plea Transcript).

offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979)[5].

In general, claims not raised on direct appeal may not be considered on collateral review. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises. First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure."

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Burke v. United States, 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted). A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." Cross v. United States, 893 F.2d 1287, 1289 (11th Cir. 1990).

Jurisdictional issues, however, are not subject to procedural default because federal courts are of limited jurisdiction and the parties cannot by waiver or default confer a jurisdictional foundation that is otherwise lacking. Harris v. United States, 149 F.3d 1304, 1307 (11th Cir. 1998). In addition, claims of ineffective assistance of trial or appellate counsel are properly raised under § 2255 regardless of whether they could have been raised on direct appeal. Massaro v. United States, 538 U.S. 500, 509 (2003).


## III. DISCUSSION

    A.   Claim One: Trial Counsel's Ineffectiveness Rendered Guilty Plea Invalid.

In her Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, Harris argues that her counsel was

ineffective in advising her to enter a guilty plea which included all 140 kilograms of cocaine. (Doc. 30 at 9). Specifically, Harris claims that her attorney, Mr. Yelverton, induced her to sign the plea agreement by advising her that, "[u]nfortunately you would be in a messed up state- you are caught between a rock in a hard place- they(prosecution)already have willing co-defendants that will testify." (Id.). Harris argues that she did not understand until right before the plea hearing that she would be responsible for all 140 kilograms.[6] (Doc. 30 at 6; Doc. 36 at 1). However, the record reflects that during the plea proceedings, Harris admitted that the government could find her responsible for 140 kilograms of cocaine beyond a reasonable doubt. (Doc. 20, Factual Resume at 13; Doc. 33 at 9). Additionally, Harris clearly states in both her Motion to Vacate

---

[6] In her reply, Harris asserts that "(f)ive minutes before plea colloquy was conducted I was informed by counsel of the increase amount of powder (140 kilograms, it was originally 100 kilograms...)." However, Harris' indictment charges her with conspiracy to possess with intent to distribute *more than* 100 kilograms of cocaine. Moreover, under the U.S. Sentencing Guidelines, the base offense for 100 kilograms of cocaine is the same as for 140 kilograms. See U.S.S.G 2D1.1(c)(2).

and Reply that she had no intention of pleading not guilty and proceeding to trial.[7]

The Court begins its analysis of Harris' challenge to the voluntariness and intelligence of her guilty plea by underscoring that the circumstances under which a guilty plea may be attacked on collateral review are severely limited. It is well settled that "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley v. U.S., 523 U.S. 614, 621 (1998). "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Id. (citations and internal quotation marks omitted). In this action, Harris chose not to file a direct appeal. (Doc. 25). By failing to do so, Harris procedurally defaulted the claim that she now advances.[8]

---

[7] Harris urges the court to "correct error of judgment [as to] attributable amount of cocaine" and states that "[p]etitioner should be held responsible for at least 5 kilograms of cocaine." (Doc. 30, at 13). Harris further asserts in her Reply, "I would like this Court to note I'm not disputing my plea." (Doc. 36 at 1).

[8] The courts have recognized an exception to the procedural default rule for claims that could not have been reviewed on direct appeal without further factual development. See Bousley, 523 U.S. at 621-22. However, Harris' claim related to her understanding and the voluntariness of her guilty plea could have been fully and completely addressed on direct review based on the record created at the plea colloquy. Thus, this exception
(Continued)

However, even if Claim One were not procedurally defaulted due to the claim being couched as an ineffective assistance of counsel claim, it is due to be denied on the merits. A plea of guilty is "constitutionally valid" if "voluntary" and "intelligent." <u>Bousley</u>, 523 U.S. at 618. A plea is voluntary in a constitutional sense if it was "entered by one fully aware of the direct consequences of the plea," and not induced by threats, misrepresentation, or "promises that are by their nature improper as having no proper relationship to the prosecutor's business." <u>Id.</u> at 619 (citations and internal quotation marks omitted). A plea is intelligent in a constitutional sense if a criminal defendant received "real notice of the true nature of the charge against him." <u>Id.</u> at 618 (citations and internal quotation marks omitted). If the defendant "was advised by competent counsel, was in control of his mental faculties, and was made aware of the nature of the charge against him," his plea was entered intelligently even if at the time of the plea, he "did not correctly assess every

_____

does not apply to Harris' procedural default of habeas Claim One.

11

relevant factor entering into his decision." <u>Id.</u> at 619 (citations and internal quotation marks omitted).

The record reflects that Judge Steele conducted a full and sufficient plea colloquy with Petitioner as required by <u>Federal Rule of Criminal Procedure 11</u>. (See Doc. 33). Harris was placed under oath and warned of the possibility of a perjury charge if she answered any of the Court's questions falsely during the proceedings. (Doc. 33 at 2). Harris stated that she was 44 years old and had completed two years of college. (Id.). She stated that she was not "presently under the influence of any drug, medication, or alcoholic beverage" which would affect her ability to participate in the proceedings. (Doc. 33 at 3). Harris also affirmed that she was fully satisfied with the counsel of her attorney, Mr. Yelverton, who was appearing with her in Court at that time. (Id. at 3-4). Harris stated that she had been given the opportunity to read and discuss the plea agreement with her attorney before she signed it and understood the terms of the plea agreement. (Id. at 4). Harris also stated that she understood the potential 10 year sentence she was facing, in light of her admission to actual involvement beyond a reasonable doubt as to 140 kilograms of cocaine.(Id. at 5; <u>See also</u>, Factual Resume, Doc. 20, at 13).

Of particular significance to Harris' claim is the following exchange which took place during the guilty plea hearing:

> THE COURT: Okay. Have you received a copy of the indictment in your case, had a full opportunity to read it and review it with your attorney, and do you understand the charge contained in the indictment?
>
> DEFENDANT: Yes.
>
> THE COURT: Is it necessary that I read the indictment to you?
>
> DEFENDANT: No, sir
>
> THE COURT: Are you fully satisfied with the representation you've received from your attorney in this case, and have you fully discussed with your attorney all the facts surrounding the charge?
>
> DEFENDANT: Yes.
>
> THE COURT: I've been furnished a written plea agreement in your case, and this plea agreement appears to have your signature at the end of the plea agreement and also at the end of the factual resume. Did you, in fact, sign the document?
>
> DEFENDANT: Yes, I did.
>
> THE COURT: By signing this document, you are acknowledging that you received a copy of it, that you've had an opportunity to review it and discuss it with your attorney, that you fully understand the terms and conditions of the plea agreement and the factual resume, and that you agree with it. Is that true?
>
> DEFENDANT: Yes.

THE COURT: All right. Have there been
promises made to you by anyone or has anyone
attempted in any way to force you to plead
guilty or to pressure you or threaten you in
any way?

DEFENDANT: No.

THE COURT: Now, the penalties that could be
imposed if convicted of Count One of the
indictment are outlined on page three of the
plea agreement. If convicted of that count,
you could receive a term of imprisonment of
a mandatory minimum of 10 years up to life
without parole, a fine not to exceed four
million dollars, a supervised release term
up to five years, and a mandatory special
assessment of $100. Do you understand that?

DEFENDANT: Yes.

(Id. at 3-5).

"There is a strong presumption that the statements made

during the [plea] colloquy are true." United States v. Madlock,

12 F.3d 185, 187 (11th Cir. 1988). "[W]hen a defendant makes

statements under oath at a plea colloquy, he bears a heavy

burden to show his statements were false." United States v.

Rogers, 848 F.2d 166, 168 (11th Cir. 1998). Moreover, a

defendant's representations regarding the voluntary nature of

his plea "constitute a formidable barrier in any subsequent

collateral proceedings. Solemn declarations in open court carry

a strong presumption of verity." Blackledge v. Allison, 431 U.S.

63, 74 (1977).

14

As discussed above, Harris contends that her guilty plea is invalid because trial counsel induced her to sign a plea agreement admitting to the total amount of cocaine by advising her that she was, "caught between a rock and a hard place." (Doc. 28 at 3). In order to establish a claim for ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation "fell below an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland v. Washington* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203(1985).

> To succeed on such a claim, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In addition, the defendant must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370. In other words, ... [a petitioner] "must show that there is a reasonable probability that, but for counsel's errors, he would. . . have

> pleaded [not] guilty and would. . . have
> insisted on going to trial." <u>Hill</u>, 474 U.S.
> at 59, 106 S.Ct. at 370.

<u>Coulter v. Herring</u>, 60 F.3d 1499, 1504 (11th Cir. 1995)(footnote, brackets and ellipses added), <u>cert. denied sub nom. Coulter v. Jones</u>, 516 U.S. 1122, 116 S.Ct. 934, 133 L.Ed.2d 860 (1996).

When applying the <u>Strickland</u> standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." <u>Oats v. Singletary</u>, 141 F.3d 1018, 1023 (11th Cir. 1998)(citation omitted), *cert. denied sub nom.* <u>Oates v. Moore</u>, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); <u>see also</u> <u>Butcher v. United States</u>, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

Harris' ineffective assistance of counsel claim as to her guilty plea is due to be denied because she cannot meet the prejudice prong stated in <u>Hill</u> and <u>Strickland</u>. Harris repeatedly states in her Motion to Vacate and Reply that she is not disputing the entry of a guilty plea but rather the propriety of her sentence. (Doc. 30, at 13; Doc. 36, at 1, 6) ("I would like this Honorable Court to note I'm not disputing my plea . . . I had no intentions but to plead guilty). Because Harris cannot

16

demonstrate that her attorney's actions prejudiced the outcome of the plea proceeding, it is not necessary to consider counsel's performance.[9] Accordingly, the Court finds that Harris' ineffective assistance of counsel Claim One is due to be denied.

B.  Claim Two:  Improper Sentencing under Sentencing Guidelines

Harris additionally argues that she was improperly sentenced because her base level offense attributed the total amount of cocaine to her individually.[10] Respondent counters that Claim Two is barred from collateral review because Harris waived

---

[9] The undersigned notes that the record, as set forth above, clearly demonstrates that Harris entered into a knowing and voluntary guilty plea, and that no additional evidence has been brought forth refuting the voluntariness of the plea. Harris was questioned pointedly about her discussions with her attorney and her understanding of the indictment.  She acknowledged that she had fully discussed the charges with her attorney. Accordingly, Harris's argument that Mr. Yelverton "induced" her into signing the plea agreement is directly contradicted by her testimony given during the plea colloquy. Furthermore, Mr. Yelverton's candid comments about the chances of her acquittal at trial can hardly be characterized as "constitutionally ineffective performance." Accordingly, Harris' claim would also fail under the first prong of Strickland.

[10] In her Reply, Harris argues that she could not have reasonably foreseen the amount of drugs involved in the conspiracy; thus, her plea bargain and sentence should have been based on individualized findings regarding the scope of her participation.  She also points to more favorable drug weight equivalencies negotiated on behalf of her co-conspirators: Hersie Jones, and Adrienne Hardshaw (Reply Doc. 36, at 4).

her right to post-conviction review of this claim in the plea agreement. (Doc. 35 at 8). For the reasons set forth below, this claim is due to be dismissed.

The Eleventh Circuit Court of Appeals has held that, "where it is clear from the plea agreement and the Rule 11 colloquy, or from some other part of the record, that the defendant knowingly and voluntarily entered into a sentence appeal waiver, that waiver should be enforced. . . ." United States v. Bascomb, 451 F.3d 1292, 1294 (11th Cir. 2006)(citation omitted); see also United States v. Bushert, 997 F.2d 1343, 1351 (11th Cir. 1993). The "core concern" for the Court in this analysis is "the defendant's knowledge and understanding of the sentence appeal waiver." Bushert, 997 F.2d at 1351.

> For a sentence appeal waiver to be enforced, "[t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." Id. at 1351. "A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues-indeed, it includes a waiver of the right to appeal blatant error." United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999). "Waiver would be nearly meaningless if it included only those appeals that border on the frivolous." Id.

Brown v. U.S., 256 Fed. Appx. 258, 261-62 (11th Cir. 2007)
(unpublished) (holding that Petitioner's right to collateral
review was waived by sentence appeal waiver in plea agreement).

As discussed previously, Harris entered into a plea
agreement on February 25, 2009. (Doc. 20). Her plea agreement
included a waiver of her right to directly appeal her sentence,
as well as a waiver of her right to a post-conviction proceeding
or collateral attack of her sentence (including but not limited
to a motion brought under 28 U.S.C. § 2255), except in limited
circumstances. (Id. at 9-10). Specifically, in the section of
the Agreement entitled "Limited Waiver of Right to Appeal
Sentence," Harris agreed as follows:

> 18. The defendant acknowledges that she is
> aware that 18 U.S.C. § 3742 affords a
> defendant the right to appeal the sentence
> imposed. In exchange for the recommendations
> made by the United States in this Plea
> Agreement, the defendant knowingly and
> voluntarily waives the right to appeal any
> sentence imposed in this case.
>
> 19. With the limited exceptions noted
> below, the defendant also waives her right
> to challenge any sentence so imposed, or the
> manner in which it was determined, in any
> collateral attack, including but not limited
> to, a motion brought under 28 U.S.C. § 2255.
> "Any sentence so imposed" includes any
> determination or sentence imposed in a
> supervised release revocation proceeding.
>
> 20. The defendant reserves the right to
> contest in an appeal or post-conviction
> proceeding any of the following:

a.    Any punishment imposed in excess
                     of the statutory maximum;

               b.    Any punishment that constitutes an
                     upward departure from the
                     guideline range;

               c.    A claim of ineffective assistance
                     of counsel.

          21.  In addition, the defendant reserves the
          right to petition the Court for resentencing
          pursuant to 18 U.S.C. § 3582 in the event of
          a future retroactive amendment to the
          Sentencing Guidelines which would affect the
          defendant's sentence.

(Id.).

     At the plea colloquy, Harris acknowledged that she

understood the potential 10 year sentence she was facing in

light of her admission that the Government could prove beyond a

reasonable doubt her actual involvement with 140 kilograms of

cocaine.(Id. at 5; See also, Factual Resume, Doc. 20, at 13). In

addition, the following exchange took place between Harris and

the Court during the guilty plea hearing:

          THE COURT: Under some circumstances,
          you and the United States each may have the
          right to appeal any sentence the judge
          imposes. For instance, you can appeal your
          conviction if you believe that your guilty
          plea was somehow unlawful or involuntary or
          if there's some other fundamental defect in
          the proceedings that was not waived by your
          guilty plea. You also have the right to
          waive your right to appeal, and I see by
          your plea agreement that you are waiving

your right to appeal any sentence imposed with the following exceptions: And that would be any punishment in excess of the statutory maximum, any punishment constituting an upward departure of the guideline range, and any claim of ineffective assistance of counsel. Do you understand that?

DEFENDANT: Yes.

THE COURT: If the sentence is more severe than you expected or if I do not accept the sentencing recommendation in your plea agreement, you will still be bound by your plea. Even if you do not like the sentence imposed by the Court, you will not be able to withdraw your plea. The time to make that decision is now. Do you understand that?

DEFENDANT: Yes.

(Id. at 14).

As noted supra, "[t]here is a strong presumption that the statements made during the [plea] colloquy are true." United States v. Madlock, 12 F.3d 185, 187 (11th Cir. 1988). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1998).

Based on the record before the Court, the undersigned finds that Harris entered into the plea agreement, which included the sentence appeal waiver, that she acknowledged her understanding of the waiver, and that she acted knowingly and voluntarily in

entering said agreement. Indeed, Harris makes no argument to the contrary. She instead seeks to dispute the amount of cocaine contained in the plea agreement. (Doc. 36 at 1, 4). However, based on the express terms of the sentence appeal waiver contained in Harris' plea agreement, the Court finds that she has waived any right to collateral review of her claim that the Court improperly sentenced her based on the amount of cocaine in the plea agreement. Harris received the minimum sentence in her sentencing guideline range; thus, her sentencing claim does not fall within any of the three exceptions contained in the sentencing waiver. Accordingly, the sentence appeal waiver is due to be enforced, and Claim Two should be denied.

C.    Claim Three: Ineffective Assistance of Counsel at Sentencing

Harris' Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 formally requests relief based only on the two grounds noted above.(Doc. 30). However, in light of Harris' pro se status, the Court liberally construes her petition to include a claim for ineffective assistance of counsel at sentencing based on Mr. Yelverton's alleged failure to explain to her the elements of offense and thereby cause her

to be "unable to refute the alleged errors at sentencing."[11] However, Harris' allegation that her counsel was ineffective at the sentence hearing is contradicted by her knowing and voluntary guilty plea to all 140 kilograms of cocaine. The crux of Harris' petition is that she did not understand that she would be sentenced based on the total amount of cocaine involved in the conspiracy when she entered into the plea bargain and that her sentence should have only been based upon her individual amount.[12]

As discussed previously, under Strickland, in order to establish a claim for ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation "fell below an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. Strickland v. Washington,

---

[11] The undersigned recognizes that recent jurisprudence in this district indicates that claims regarding ineffective assistance of counsel at sentencing may not be waived under a sentence waiver in the plea agreement. Ezell v. United States, 2009 U.S. Dist. Lexis 108289, at 5* (S.D. Ala. Nov. 19, 2009).

[12] In her Reply, Harris points to co-conspirators who received lesser sentences based on their more favorable negotiated drug equivalencies. (Doc. 36 at 4).

466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Harris's sentence was in accordance with the sentencing guidelines under 21 U.S.C. § 841(b)(1)(a), as per the amount of cocaine she admitted to in the plea agreement. Harris complains that Mr. Yelverton caused her to enter into the plea agreement by advising her that she would not be successful at trial. (Doc. 30 at 9). However, in informing Harris that the prosecution had several co-defendants who would be willing to testify against her, Mr. Yelverton merely gave her candid advice about her chances for acquittal. Most importantly, as noted previously, the record contains no evidence that suggests that Harris' counseled plea was not "voluntary" and/or that it resulted from "force, threats, or promises." <u>Fed. R. Crim. P. 11(b)(2))</u>.

Harris entered into a voluntary plea agreement and her sentence was well below the statutory minimum punishment for her offense. Due to a mitigating role adjustment, her presentence report base offense level dropped from a 36 to a 33. (PSR at ¶ 14). In addition, she received, as a result of an agreement negotiated with the Government, an additional two level reduction from the safety valve, a three level reduction for acceptance of responsibility, and a four level reduction for her minimal role in the offense. Thus, her offense level was

reduced to a 24, with a criminal history category of I. (Doc. 33-1 at 4).

Further, while Harris' attorney, Mr. Yelverton, did not make a written objection prior to the sentencing hearing, he made an oral objection to the PSR sentencing guideline range and argued that " the offense level overstates her participation and conduct." (Doc. 33-1 at 3). He urged the Court to go below the statutory minimum and cited Harris' clean criminal record, the size of the conspiracy, and her lack of knowledge of the conspiracy, which presumably prevented her from receiving further reductions under U.S. Sentencing Guidelines 5K1.1.[13] (Id. at 7).

Ultimately, in light of the multiple sentence reductions, the Court concluded that the minimum guideline range sentence of 51 months best accomplished the sentencing objectives under 18 U.S.C. § 3553(a). By negotiating a nine 9 level reduction with the Government, Mr. Yelverton performed well above the Strickland standard of "objective reasonableness" as he assisted

_____

[13] Section 5K1.1 of the United States Sentencing Guidelines provides: "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

Harris in being sentenced to 51 months, which was the low end of the sentencing range, and in escaping the minimum 10 year mandatory sentence under 28 U.S.C. 841(b)(1). Clearly, his conduct in no way prejudiced Harris in the outcome of her sentencing. Accordingly, the record does not support a finding of ineffective assistance of counsel at sentencing. Thus, Harris' habeas Claim Three is due to be denied.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)(2006).

Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying

constitutional claim, "a COA should issue [only] when the
prisoner shows . . . that jurists of reason would find it
debatable whether the petition states a valid claim of the
denial of a constitutional right and that jurists of reason
would find it debatable whether the district court was correct
in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484
(2000). Where a habeas petition is being denied on the merits of
an underlying constitutional claim, a certificate of
appealability should issue only when the petitioner demonstrates
"that reasonable jurists would find the district court's
assessment of the constitutional claims debatable or wrong." Id.
("To obtain a COA under §2253(c), a habeas prisoner must make a
substantial showing of the denial of a constitutional right, a
demonstration that, under Barefoot v. Estelle, 463 U.S. 880, 893
(1983)], includes showing that reasonable jurists could debate
whether (or, for that matter, agree that) the petition should
have been resolved in a different manner or that the issues
presented were adequate to deserve encouragement to proceed
further.") (internal quotation marks omitted); accord Miller-El
v. Cockrell, 537 U.S. 322, 336 (2003).

None of Harris's claims are such as would warrant the
issuance of a Certificate of Appealability. As previously

27

established, the sentence appeal waiver addressed in Claim Two was found to be valid; thus, a reasonable jurist could not conclude that this Court is in error in invoking that procedural bar with respect to Harris' claim related to her sentencing. See Slack, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). In addition, reasonable jurists could not debate whether Harris' Claims One and Three, alleging ineffective assistance of counsel at the guilty plea and sentencing stages should be resolved in a different manner or deserve to proceed further. The recommendation that these claims be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of the claims on the record presented. It is thus recommended that the Court deny any request for a Certificate of Appealability.

## V. CONCLUSION

For the foregoing reasons, it is recommended that Harris' § 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 30) be denied, Motion for Default Judgment and Motion to Strike (Docs. 34, 37 ) be denied,

Motion for Status (Doc. 38) be denied as Moot, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Lorie Harris. The undersigned Magistrate Judge is of the opinion that Petitioner is not entitled to issuance of a Certificate of Appealability, and thus, any appeal would not be brought in good faith. Accordingly, she is not entitled to appeal informa pauperis. It is so recommended.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this **12th** day of **May, 2011.**

                              /s/SONJA F. BIVINS
                    **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.  *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[14] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[14] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  <u>Fed. R. Civ. P.</u> 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. ***Transcript (applicable Where Proceedings Tape Recorded)***. Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.